IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON M. TOUCH,

        Petitioner,

    v.

DON MILLS,

        Respondent.

Civil No. 07-1893-ST

FINDINGS AND RECOMMENDATION

Amy Baggio
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

John R. Kroger
Attorney General
Lester R. Huntsinger
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

///

    1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying state-court convictions.  For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #2) should be denied.

<u>**BACKGROUND**</u>

In June 1997, Eric Stegman and a friend traveled to a 7-Eleven convenience store in an attempt to find someone who would agree to purchase cigarettes for them.  Petitioner approached, took $20 from the minors, and proceeded to rob the 7-Eleven.  Petitioner then departed on foot with the money he had stolen from both the minors and the convenience store. When Stegman gave chase, petitioner shot him in the leg with a .380 caliber firearm.  Respondent's Exhibit 106, pp. 38-40.

On May 4, 1998, petitioner, while armed with a handgun, robbed three employees of a McDonald's restaurant near Portland State University.  *Id* at 37-38.

The next day, petitioner and an accomplice, Jason Hastings, robbed a Carl's Jr. restaurant.  The two men held four employees on the floor at gunpoint, ultimately moving them all to a refrigerator room in the back of the restaurant.  Petitioner was armed with a chrome-plated handgun and chambered a round while pointing the gun at the head of the manager, threatening to kill her.  The cook,

Margarita Navarro, recognized petitioner because she had seen him around her apartment complex. *Id* at 29-32, 81. The store manager picked petitioner's photograph from a six-person throw-down lineup, and a search of petitioner's apartment revealed a .380 caliber bullet, a clip to a semi-automatic handgun, $1 and $5 bills wrapped with rubber bands, and quarters, dimes, and nickels rolled up in paper sleeves. *Id* at 33.

On May 18, 1998, petitioner robbed a McDonald's restaurant on NE Glisan Street while armed with a handgun. Petitioner robbed the manager, Lyone Rabie, and moved all eight of the restaurant's workers at gunpoint to a refrigerator room. *Id* at 35. The woman who had served petitioner a beverage at the McDonald's, Maria Castillia, identified him as the perpetrator of the crime from a photographic lineup. *Id* at 36.

Based on all of these incidents, petitioner was charged with 22 crimes by two indictments which were consolidated for trial. Specifically, he was charged with nine counts of Robbery in the First Degree with a Firearm, one count of Assault in the Second Degree with a Firearm, and 12 counts of Kidnapping in the Second Degree, all of which carried Measure 11 sentences.[1] Respondent's Exhibits 102-103. It is undisputed that petitioner faced a

---

[1] Measure 11 (codified as O.R.S. 137.700) was a ballot measure in Oregon which was passed in 1994 and imposed mandatory minimum sentences for certain crimes committed on or after April 1, 1995.

possible total sentence of 143 years in prison if convicted of all charges.

Hastings admitted his involvement in the Carl's Jr. Robbery, and agreed to testify against petitioner. Hastings was also prepared to testify that petitioner told him about his participation in the Portland State McDonald's robbery. *Id* at 34-35.

Candise Woodford, petitioner's then-girlfriend, agreed to testify for the State. She was prepared to testify that she did not know where petitioner went at night, that he owned a chrome-plated handgun, and that he sometimes possessed large sums of cash. *Id* at 40-41.

Also problematic for the defense was physical evidence left at the McDonald's near Portland State in the form of a paper cup with petitioner's fingerprints on it.

Despite this evidence against him and a potential 143-year sentencing exposure, petitioner did not wish to plead guilty and insisted on proceeding to trial.

On the first day of trial, the State presented its case pertaining to the robbery of the Carl's Jr. Three of the restaurant's employees identified petitioner as the robber, and all described him as carrying a shiny silver or chrome handgun. *Id* at 60, 69, 87-88, 104, 109.

4 - FINDINGS AND RECOMMENDATION

After the court excused the jury for the day, the court granted petitioner permission to meet with his mother and his attorney in the jury room. *Id* at 131-132. The transcript does not reveal whether Woodford also met with petitioner in the jury room, but petitioner claims she was present.[2]

When the parties reconvened for trial the following day, counsel for petitioner informed the court that petitioner would like to change his pleas pursuant to a contract plea, but wished to ask the court what maximum sentencing exposure he faced if convicted at trial, and how consecutive sentencing might work in his case. *Id* at 133. The court and the parties addressed each of the charges individually and concluded that petitioner faced 143 years of Measure 11 time without the possibility of parole if convicted on all counts. While the court informed petitioner that the sentences could be run consecutively, it refused to advise him with any certainty which sentences it would run consecutively if the jury convicted him. *Id* at 134-144.

Petitioner then pled guilty to Attempted Robbery in the First Degree with a Firearm and two counts of Robbery in the First Degree and, as required by the contract plea, the trial court sentenced petitioner to consecutive sentences totaling 250 months in prison. *Id* at 147-150. The remaining charges were dismissed.

---

[2] According to counsel's affidavit, petitioner met with Woodford the following morning before the trial was to resume. Respondent's Exhibit 116, p. 4.

Petitioner filed a direct appeal, but the Oregon Court of Appeals granted the State's Motion for Summary Affirmance. Respondent's Exhibit 109.

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County where the PCR trial court denied relief. Respondent's Exhibits 118-119.   The Oregon Court of Appeals summarily affirmed the lower court without issuing a written opinion, and the Oregon Supreme Court denied review.   *Touch v. Schiedler*, 199 Or. App. 416, 112 P.3d 1203 (2003), *rev. denied*, 343 Or. 115, 162 P.3d 988 (2007).

Petitioner filed this federal habeas corpus case on December 26, 2007, alleging a single ground for relief, namely that his trial counsel was constitutionally ineffective because he coerced petitioner into pleading guilty.[3]   Respondent asks the court to deny relief on the Petition because the claim is without merit.

**FINDINGS**

**I.   Expansion of the Record**

As an initial matter, petitioner seeks to expand the existing record to include affidavits from his mother and Woodford.   In their affidavits, the women confirm that counsel asked them to convince petitioner to plead guilty, and petitioner's mother

---

[3]   While petitioner also raised a due process challenge in his Petition, he has withdrawn that claim.

corroborates petitioner's claim that counsel indicated that he would not know what to say to defend petitioner.

Where, as here, a prisoner wishes to introduce new evidence in the absence of an evidentiary hearing, the evidentiary hearing requirements of 28 U.S.C. § 2254(e)(2) nevertheless apply. *Holland v. Jackson*, 124 S.Ct. 2736, 2738 (2004). Accordingly, if petitioner has failed to develop his claim in the state courts, he may only supplement the record if his claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). He must also demonstrate that the facts underlying the claim are sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

According to petitioner, he was denied the opportunity to develop the affidavits at issue during his PCR trial for two reasons: (1) he was not allowed additional time to prepare for his deposition after he was misinformed as to the date of the deposition; and (2) he asked the PCR trial court for more time to prepare his case and requested the opportunity to call witnesses, but his PCR trial counsel stated on the record that he was "not

7 - FINDINGS AND RECOMMENDATION

going to call witnesses on a guilty plea case." Respondent's
Exhibit 117, p. 4.

The record reveals that petitioner's deposition was actually
set over once to allow him additional time to prepare, apparently
because he again claimed he was not told the proper date for the
deposition. Respondent's Exhibit 115, pp. 4-5. While a second
setover was not allowed, it is unclear how any additional
deposition preparation would have allowed petitioner to ask his
mother and Woodford to author the affidavits they developed during
the course of this federal habeas proceeding. In addition,
petitioner filed his PCR action almost 10 months prior to the
taking of his deposition. It is therefore not reasonable for him
to assert that such a timeline interfered with his ability to talk
with his mother and Woodford.

With respect to petitioner's request for additional
preparation prior to his PCR trial, his PCR trial was conducted one
year after his deposition was taken and almost two years after he
filed his PCR action. This time period was clearly sufficient to
allow him to obtain two affidavits.

Finally, as to petitioner's inability to call witnesses during
his PCR trial, his PCR attorney advised him that witnesses in PCR
hearings generally appear by affidavit. Respondent's Exhibit 117,
p. 4. Because petitioner could easily have obtained affidavits
from his mother and Woodford prior to his PCR trial, he did not

exercise diligence in developing the evidence in the state court. Even if the court were to assume that he did exercise the requisite diligence, petitioner's proposed evidence does not establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the underlying offenses. 28 U.S.C. § 2254(e)(2)(B).

As a result, expansion of the record is not appropriate. Thus, the court will not consider the proffered affidavits.

## II.   <u>Standard of Review</u>

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## III. <u>Analysis</u>

According to petitioner, his trial attorney improperly coerced him into pleading guilty when counsel: (1) used petitioner's family to pressure him to enter his plea; and (2) informed petitioner that he should enter into a plea bargain because he had no defense.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption

10 - FINDINGS AND RECOMMENDATION

that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles,* 129 S. Ct. at 1420.

The PCR trial court made the following findings with respect to petitioner's claim:

> Petitioner did not testify as to what his trial counsel allegedly said to his family other than that if he didn't take the plea offer and he was convicted he would spend much more time in prison. No one who was present at that meeting between petitioner's family and petitioner's attorney testified as to what was said. The court does not find petitioner's testimony to be convincing on the issue that his family was used to coerce him into taking the plea agreement.

\* \* \* \* \*

11 - FINDINGS AND RECOMMENDATION

> Petitioner testified that his attorney told
> him that he had better take the plea agreement
> because he had no defense.  His trial counsel
> sets forth in his affidavit . . . that he
> discussed the case with petitioner on numerous
> occasions.  That on the first day of trial
> three victims identified petitioner as one of
> the perpetrators of the crimes alleged and
> that trial counsel discussed with petitioner
> that a co-defendant had agreed with the state
> to testify against petitioner.  Petitioner
> identifies no instances in the trial
> transcript, or the transcript for change of
> plea and sentencing where trial counsel was
> inadequate nor does the court find such
> inadequacy.

Respondent's Exhibit 118, pp. 3-4.

According to petitioner, he met not only with his mother and his attorney following the first day of his criminal trial, but also with Woodford.  He claims that he was pressured by the two of them to plead guilty.  Aside from his own testimony, petitioner presented no evidence during his PCR trial to substantiate this claim.  Importantly, the PCR trial court did not find petitioner's testimony regarding family coercion to be convincing.  Absent clear and convincing evidence to the contrary, this credibility determination is binding on this court.  Because petitioner cannot credibly assert that his attorney used his family to coerce him into pleading guilty, he cannot prove an ineffective assistance of counsel claim.

Petitioner also claims that trial counsel rendered ineffective assistance by advising him to take the plea deal offered by the State because he had no defense to present.  Counsel's Affidavit in

the PCR trial court does not deny this allegation, and the PCR trial court made no specific factual findings as to whether trial counsel said this.  Respondent's Exhibits 116, 118.

Petitioner argues that his attorney's statement regarding the lack of an available defense was particularly egregious in light of the state court record.  Specifically, petitioner points to the following:

- Stegman admitted to a defense investigator that he picked petitioner out of a lineup because he was "the only one who was not skinny."  Respondent's Exhibit 116, Att. C. The defense investigator also discovered that petitioner had consumed four beers on the night he was robbed and shot, and in the months following the robbery he suffered severe head trauma during an automobile accident.  *Id.* All of this leads petitioner to conclude that Stegman might not have been able to identify petitioner as the perpetrator of the crimes committed in and around the 7-Eleven.[4]

- Multiple witnesses placed petitioner at home playing cards at the time of the May 19, 1998 McDonald's robbery.

- Officer Rilling testified that the original 911 call reported that the two robbers of the Carl's Jr. were Hispanic, something plaintiff does not claim to be.  *Id* at 118.

- The defense developed additional impeachment evidence regarding the 7-Eleven robbery when Ida Cook, the clerk working at the convenience store at the time of the robbery, told the defense investigator that she was no longer able to identify the person who robbed the store due to the passage of time.  Respondent's Exhibit 116, Att. B.

---

[4] While petitioner asserts that even the trial judge recognized there might be reasonable doubt as to petitioner's identification as the shooter, the court's review of the record belies this assertion.  The trial judge only used this hypothetical to illustrate how much time petitioner might face due to a firearm enhancement even if he was never identified as the shooter.  Respondent's Exhibit 106, p. 136.

- Navarro admitted on cross-examination that she wrongly identified one of her neighbors as one of the perpetrators of the Carl's Jr. robbery. Respondent's Exhibit 106, pp. 97.

Whether Stegman could have identified petitioner at trial due to his severe head injury is uncertain, but he did so during a photographic throwdown, an identification which was never the subject of a motion to suppress even though petitioner now takes issue with the propriety of the process. This identification, coupled with the evidence showing that Stegman was shot with a .380 caliber bullet, and a .380 caliber bullet and a clip for a semi-automatic pistol were found during a search of petitioner's apartment, could certainly lead a jury to infer that petitioner robbed and shot Stegman. Moreover, given the number of charges, even if petitioner were acquitted as to all counts involving Stegman, he nevertheless faced the possibility of a 130-year sentence. Stated another way, any inability of Stegman to identify petitioner at trial following his severe head injury would not have allowed counsel to mount a full defense to the 20 remaining charges petitioner faced.

Petitioner also points to his alibi defense for the McDonald's robbery on NE Glisan. Petitioner's mother and his two sisters were prepared to testify that on the night the McDonald's was robbed, petitioner arrived at his mother's house at approximately 7:00 p.m. and stayed until approximately 10:30 p.m. when his mother took him

to a friend's house in Northeast Portland.[5]  Respondent's Exhibit
116, Att. A.   This alibi evidence was weak, showing only that
petitioner was driven to Northeast Portland close to the time the
McDonald's restaurant (also located in Northeast Portland) was
robbed at approximately 11:00 p.m.  Respondent's Exhibit 106, p.
35.   There is no evidence anywhere in the record to show that
petitioner's friend would have testified as to the alibi, and none
of petitioner's family members could apparently identify the friend
to the defense investigator.  As a result, counsel could not have
realistically relied on this evidence to demonstrate his client's
innocence at trial.

Petitioner next points out that the manager of the Carl's Jr.
improperly identified him as Hispanic.  But petitioner fails to
show that such a description is visually inaccurate.  Indeed, it is
noteworthy that the Oregon Department of Corrections listed
petitioner's race as "Hispanic," and that his mother's surname is
Paau, possibly reflecting a racial composition that might be
visually confused with Hispanic.  Respondent's Exhibits 101, 116,
Att. A.

Petitioner also directs the court to the defense
investigator's interview of Ida Cook, the 7-Eleven cashier, who
indicated that "she does not feel she could identify the individual

---

[5] Petitioner's sister places his departure at 10:30 p.m. while his mother recalls
that she dropped petitioner off at NE 162nd and NE Stark Street "between 10 and 11 p.m."
Respondent's Exhibit 106, Att. A.

who attempted to rob her because the incident took place some 16 months ago, in June of 1997." Respondent's Exhibit 116, Att. B. She did, however, indicate that the perpetrator was a "dark complected male who's (sic) ethnicity she could not determine. . . ." *Id.* She also remembered petitioner as being short in stature. *Id.* Cook's inability to identify petitioner due to the passage of time does not constitute a defense to the myriad charges petitioner faced. Indeed, her ability to recall that petitioner was a short, dark complected male of ambiguous ethnic background is consistent with the testimony of other victims, as well as the Oregon Department of Corrections' information which lists petitioner as 5'9" tall and of Hispanic descent. Respondent's Exhibit 101.

Finally, petitioner points out that Navarro, the Carl's Jr. cook, recanted one of her eyewitness identifications. While Navarro initially misidentified Hastings as being one of her neighbors, she never misidentified petitioner and was unwavering during her trial testimony. Respondent's Exhibit 106, pp. 97, 100. In addition, Hastings was present during this robbery and agreed to testify against petitioner which rendered Navarro's identification relatively unimportant. Thus, there was not much of a defense to petitioner's participation in the robbery and kidnappings at the Carl's Jr.

A thorough review of the record reveals that defense counsel earnestly tested the prosecution's case and its witnesses, but the evidence against petitioner was so great that any defense he could have been presented would realistically have been as beneficial to petitioner as his contract plea.   This is especially true where petitioner's crimes included four separate incidents including many different victims which allowed the imposition of multiple consecutive Measure 11 sentences pursuant to ORS 137.123.

Therefore, the court finds that counsel's performance did not fall below an objective standard of reasonableness when he advised petitioner to enter a guilty plea on the basis that he would be unable to present a viable defense.   As a result, the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #2) should be DENIED, and a judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.   Objections, if any, are due October 9, 2009.   If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

17 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd  day of September, 2009.

s/___Janice M. Stewart_____
        Janice M. Stewart
        United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION